# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Arendi S.A.R.L. | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 12-1600-LPS |
| HTC Corp. a/k/a High Tech Computer, Corp. | : | |
| Defendant. | : | |
| B.E. Technology, L.L.C. | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 20-621-LPS |
| Twitter, Inc. | : | |
| Defendant. | : | |
| B.E. Technology, L.L.C. | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 20-622-LPS |
| Google LLC, | : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

At Wilmington this **15th** day of **December, 2020**:

WHEREAS, Defendants in the above-listed cases filed Rule 12 motions to dispose of patent infringement claims on the bases that certain patent claims are invalid under 35 U.S.C. § 101, because they are allegedly directed to unpatentable subject matter;

WHEREAS, the above-listed case brought by Arendi S.A.R.L. ("Arendi") is unrelated to the above-listed cases brought by B.E. Technology, L.L.C. ("B.E. Tech");

WHEREAS, the Court heard oral argument in all of the above-listed cases on December 4, 2020, and has considered the parties' respective briefs and related filings;[1]

WHEREAS, the Court continues to find that its experimental procedure of addressing multiple Section 101 motions from separate cases in one hearing is an efficient use of judicial resources and a beneficial tool for resolving the merits of Section 101 motions;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, with respect to the above-listed *Arendi* case, Defendant's Rule 12 motion (C.A. No. 12-1600 D.I. 137) is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that, with respect to the above-listed *B.E. Tech* cases, Defendants' joint Rule 12 motions (C.A. No. 20-621 D.I. 8; C.A. No. 20-622 D.I. 8) are **GRANTED WITHOUT PREJUDICE**.

The Court's Order is consistent with the following bench ruling announced at the conclusion of the December 4, 2020 hearing (*see, e.g.*, C.A. No. 12-1600 D.I. 151; C.A. No. 20-621 D.I. 24; C.A. No. 20-622 D.I. 24 ("Tr.") at 102-29) (all emphasis added):

---

[1] Chief Judge Leonard P. Stark and Magistrate Judge Christopher J. Burke jointly presided throughout the argument. The Court adopts the full bench ruling and includes here only a portion of it.

1

Case 1:12-cv-01600-LPS   Document 152   Filed 12/15/20   Page 3 of 18 PageID #: 4839

. . . I'm not going to repeat at any length the legal standards on Section 101 law. I did not see any material differences in how the five parties who argued today articulated the law on Section 101. Where there are specific issues of [Section] 101 law that are pertinent to the motions I'm deciding, I will note that.

But for now, I will just say that I'm incorporating by reference the legal standard sections on Section 101 law as well as on the standards in the Third Circuit for Rule 12(b)(6) and Rule 12(c) motions. I incorporate by reference those standards as articulated in the following cases:

The Federal Circuit's decision in *Berkheimer* . . . .[2]

The *DiStefano Patent Trust LLC v. LinkedIn Corp.* decision from this court, 346 F. Supp. 3d 616, in 2018, which was affirmed by the Federal Circuit in 2019 at 784 F. App'x 785.[3]

As well as a Third Circuit decision earlier this year, *Jenkins v. SEPTA*, 801 F. App'x at 72,[4] which talks about how the Rule 12(c) standard is the same as the Rule 12(b)(6) standard.

So all of that sets out the general framework for the analysis I have undertaken [relating to] the motions that were presented and argued today.

With that background, I will turn first to the Arendi case . . . . That is HTC's motion. It arises under Rule 12(c), and there are two [parts] to the motion: First is a Section 101 challenge to the patent eligibility [of] what we are calling the '843 patent [U.S. Patent No. 7,917,843], and second is a collateral estoppel challenge to what we are calling the '993 patent [U.S. Patent No. 8,306,993].

For the reasons I am now going to explain, I have decided that the motion is denied as to the Section 101 challenge to the '843 patent and the motion is granted as to . . . collateral estoppel . . . [and] the '993 patent.

---

[2] *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

[3] *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019).

[4] *Jenkins v. SEPTA*, 801 F. App'x 71, 72 (3d Cir. 2020).

I will start by talking at some length about the [Section] 101 challenge to the '843 patent.

The parties agree that claim 1 is representative. They agree that there is no dispute over claim construction. And, again, it is a motion that arises under Rule 12(c).

Nearly a year ago, at a 101 [D]ay last December [i.e., 2019], I addressed a very similar motion in other cases brought by Arendi against other defendants.

At that time, I held that claim 1 of the '843 patent, the representative claim, was directed to patent eligible subject matter at Step 1 [of *Alice*[5]] as it was directed to an improvement in computer functionality. And for that conclusion, I found support in cases including the Federal Circuit's decision[s] in *Data Engine*,[6] *Ancora*,[7] *Core Wireless*,[8] and *Finjan*.[9]

For today's motion by HTC, I have considered the same issue. That is, the patent eligibility of the representative claim of [the] '843 patent. I have considered that issue *de novo* as HTC is entitled [to have] me . . . do. And I have, of course in addition to everything else, . . . considered the specific arguments made by HTC. And having done so, I have come to the same conclusion . . . namely, that HTC's motion fails at Step 1.

HTC's motion hinges on whether claim 1 is directed to an improvement in computer functionality. And I find it is.

In the other Arendi actions last year, I held as follows – and this is a quote:

> "The claim is directed to displaying an electronic document using a first computer program, while displaying that document, analyzing first information in that document for types of

---

[5] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

[6] *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).

[7] *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018).

[8] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).

[9] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018).

3

>information that can be searched for in an information source external to the document, causing a search for that type of information in the external information source, using a second computer program, and if any second information related to the search term is found, using at least part of that second information to perform an action in the first computer program."

All of that is a quote from page 7 of what I'm going to call the ["]Section 101 [O]rder.["]  It can be found in, among other places, our Civil Action No. 12-1595 at D.I. 178. . . . .

With respect to the portion I just quoted, my holding from last year, I still believe that most of what I said there was correct, and most importantly, I believe that claim 1 survives the motion[,] as the defendant, now HTC, has failed to show at Step 1 that the claim is directed to an abstract idea.

My thoughts[,] however[,] have evolved as I have come to understand the technology even better and have [had] the benefit of additional arguments [from] HTC, the defendant who of course was not heard last year. . . . I do not believe [any longer] that the improvement to computer technology captured by claim 1 . . . requires that the second information be used to perform an action *in the first program.*  The second information must be used to perform an action, but that action is not required to be performed *in the first computer program.*

The best reading of what I said last year is that at least part of the second information had to be used to perform an action in the first computer program, but I no longer think that the action with the second information has to be performed in the first computer program when we're talking about claim 1.

This revised understanding of claim 1, however, does not lead to a different outcome because claim 1 is still directed to an improvement in computer functionality.  Namely, it is directed to . . . what [Plaintiff] and then the Federal Circuit and [I] have called beneficial coordination.

Beneficial coordination requires being able to obtain information from a second program without leaving the first program[,] but it does not always and necessarily require performing an action with that second information *in the first program.*

4

This is consistent with how the Federal Circuit describe[d] beneficial coordination and what the claims of the '843 patent are directed to in . . . *Arendi v. Apple* . . . .[10]

Specifically, in that opinion, the Federal Circuit said – and this is a quote:

> "The '843 patent is directed to providing beneficial coordination between a first computer program displaying a document and [a] second computer program for searching an external information source. The patent allows [a] user to access and conduct a search using the second computer program while remaining in the first computer program displaying the document."

Consistent with many cases, including *Uniloc v. LG*, . . . from the Federal Circuit earlier this year,[11] for software innovations, the Step 1 inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool.

Here, as I concluded last year and again today, the '843 patent claim falls into that first category. The claims focus on specific asserted improvements in computer capabilities.

Last year, I held that the specific improvement of . . . the '843 [patent] was beneficial coordination. I found that three of the challenged patents[–] . . . last year were directed to non-patentable subject matter because they did not capture [in] their claim[s] . . . this inventive concept.

I upheld the patentability of the '843 patent, the one being challenged again today, because claim 1 of the '843 patent does capture the inventive concept. That's the technical improvement of beneficial coordination. I said that at page 7 and page 8 of the [Section] 101 [O]rder from last year, and . . . I have done so again today.

---

[10] *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1357 (Fed. Cir. 2016).

[11] *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020).

5

I do continue to find that there is what I called last year a temporal limitation in the improvement in computer functionality that we are calling beneficial coordination. As I put it last year in the [Section] 101 [O]rder at page 9, that is, being able to work at two programs at the same time.

Given my clarification as to how I understand the claims, I don't think there is anything left to HTC's contention that I am today erroneously reading a limitation from claim 4 into claim 1; and in light of my clarification, I'm not even sure that HTC would argue any longer that I am making such an error.

I also disagree with HTC's comparison of claim 1 to claims that have been found to be directed to ["]display["] and therefore not eligible for patenting. I recognize that HTC is not arguing that all display claims are patent ineligible, [b]ut they have contended that claim 1 of the '843 patent is a claim that can be practiced by mere display and therefore is ineligible[. But] claim 1 cannot be practiced merely by display, even in an embodiment where the ["]action["] in the first program may be use of second information by display of the second information [in] the first program. There are still other limitations in claim 1 of the '843 patent. In other words, the claim here is not one that can be credibly reduced to just a display claim, and so it's not patent ineligible for that reason.

Also contrary to HTC's argument, the Federal Circuit does not require physical improvement, or concrete claim language, or a novel structure, such as a file type, data structure, or user interface[,] to survive a Section 101 challenge.

HTC also argues that claim 1 fails to disclose how to achieve the purported improvement in computer functionality. But nothing in the briefs or the argument today changes my view as articulated by Arendi in its opposition brief . . . , which is itself consistent with what I held last year, the following[:]

> "Claim 1 [of the '843 Patent] discloses when and how the analysis is performed ('while the document is being displayed' and [to] 'determine if the first information is at least one of a plurality of types of information that can be searched for in order to find second information'), how the input device is configured and used ('configured by the first computer program'), how the search is performed ('using at least part of the first information as a search term in order to find the

6

> second information of a specific type or types, associated with the search term in an information source external to the document, wherein the specific type or types of second information is dependent at least in part on the type or types of the first information'), and how the results of the search are used ('performing an action using at least part of the second information,' the action being 'of a type depending at least in part on the type or types of the first information') in the same manner as the eligible claims from [these] cases, if not more so."[12]
>
> . . .

HTC argues that the most analogous Federal Circuit case is . . . *Intellectual Ventures I LLC v. Erie Indemnity Co.*, a decision of the Federal Circuit in 2017, . . . .[13]

According to HTC, claim 1 of the '843 patent, like the claims at issue in *Erie*, is directed to retrieval of information for use in some way and lacks detail regarding how the claimed input device allows the first computer program to communicate with the second computer program to result in any unique delivery of information [in] response.

In my view, *Erie* is not truly analogous to the claim being challenged here today. The claims at issue in *Erie* related to methods of creating and searching [a] database. The Federal Circuit stated there that[] "[t]he invention was drawn to the abstract idea of 'creating an index and using that index to search for and retrieve data.'"[14] . . .

The claims there were about collecting, classifying[,] or otherwise filtering data. Here, claim 1 of the '843 patent is not so simple. There is more to the claim than searching and retrieving data. In particular, the beneficial coordination aspect adds something more that distinguishes this claim from those in *Erie*.

Claim 1 of the '843 patent does not suffer from the lack of specificity that was fatal to the claim[s] [in *Erie*]. Rather than

---

[12] *See* D.I. 139 at 12.

[13] *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017).

[14] *Id.* at 1327.

7

merely disclose a desired result without any information as to how that result is to be achieved, as HTC also suggests, claim 1 of the '843 patent includes at least as much specificity as the claim language found to be adequate by the Federal Circuit in cases like *Data Engine, Ancora, Core Wireless*, and *Finjan*. I said that last year, [at] page 8 of the [Section] 101 [O]rder, and I continue to find that.

Claim 1 of the '843 patent recites a specific, multistep method of searching for and retrieving information while working in an electronic document and not having to close that document or the program in which the document is running.

Similarly, I again conclude, as I did last year, that . . . other arguments made by HTC fail just as they did when they were made by the other defendants last year. That is, claim 1 is not drafted in a purely functional manner. The claimed improvement in functionality is captured in the claim. And I am not persuaded that the claims use only conventional computer components and are therefore not patent eligible.

At page 8 of the [Section 101 O]rder last year, I rejected all of these arguments from the other defendants, and I do so again today to the extent HTC is pressing them.

I will also note, as was pointed out during the argument, that the case law is more clear this year than it was a year ago[, establishing that] a claim like this one can be found to be directed to a technical solution to a technical problem and thereby cause a 101 motion to fail [at] Step 1. That can happen even if that same problem also arises in a non-computerized, physical world context.

. . . I take that to be part of the holding in *TecSec Inc. v. Adobe Inc.* . . . .[15]

. . .

This means the claims as represented by claim 1 are not claims that are directed to an abstract idea. Again, the law is clear to me now that if, as I am saying today, this claim is directed to an improvement in computer functionality, then I am likewise necessarily saying that the claim is not directed to an abstract idea.

---

[15] *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1296 (Fed. Cir. 2020).

8

Finally, to the extent that HTC is arguing preemption, I conclude that because HTC has not prevailed on the *Alice* test . . . it follows as a matter of law that HTC has not shown that claim 1 preempts too much and is not patentable due to preemption concerns.

Moreover, the claim is not boundless as HTC contended. To practice it, among other things, you must have the benefit of beneficial coordination, as the Federal Circuit and I have defined it.

Given my conclusions at Step 1, I do not need to address Step 2 and I will not address Step 2. I will instead turn to the collateral estoppel issue in the '993 patent.

As I have said, this portion of HTC's motion is granted.

The pertinent background is that I considered the '993 patent at last year's 101 [D]ay as well, and I found that the non-HTC defendant[s] succeeded in showing that the '993 patent was not patent eligible. Accordingly, the '993 patent is no longer asserted in the other Arendi cases.

And in this case, today, Arendi agrees it cannot proceed on the '993 patent against HTC either. HTC's motion asks the Court to rule in this case that the '993 patent is not patent eligible by applying collateral estoppel.

Today, Arendi made clear that it concedes all four elements required under Third Circuit law for application of collateral estoppel are met here. Arendi asks me, nonetheless, not to grant HTC's motion but instead to exercise my broad discretion in connection with case management, [to] just stay proceedings on the '993 patent in this case rather than dismiss the '993 patent from this case.

. . .

[I will] apply collateral estoppel and dismiss the '993 patent from this case.

. . .

After all that, let me now turn to the two B.E. Technology cases.

9

In the B.E. Technology cases, there are of course two defendants, Twitter and Google, who have each filed motions to dismiss under Rule 12(b)(6).

The motions were briefed together, argued together, they're identical, and so my analysis and ruling apply equally to both motions.

For reasons that I will explain, the two motions in the B.E. Tech cases are granted, but they are granted without prejudice to B.E. filing a motion for leave to amend, which [D]efendants will then have an opportunity to oppose.

Let me explain.

First, B.E. Tech does not dispute [D]efendants' contention that for purposes of the [Section] 101 motion, claim 1 of the '410 patent [U.S. Patent No. 8,549,410], what we're calling the '410 patent, is representative of all the claims at issue. That is, claims 1 to 19 of the '410 patent, claims 1 to 19 of the '411 patent [U.S. Patent No. 8,549,411], and claims 1 to 37 of the '440 patent [U.S. Patent No. 8,769,440]. So there is no dispute about representativeness.

The parties also agree that no claim construction is necessary at this stage of the case.

Now, in connection with the [Section] 101 analysis that I have undertaken today and I'm about to explain to you, I have disregarded the expert declaration of Ivan Zatkovich which can be found at D.I. 14. [T]he declaration that [P]laintiff submitted in support of its answering brief . . . is neither attached to, integral to, or referenced in the operative complaint. Therefore, my understanding is I cannot consider it on the merits of the [Section] 101 issue.

I can consider it, have considered it, and will consider it and discuss it in connection with the decision as to whether to allow amendment or, as here, allow a motion for leave to file an amended complaint. But on a pure [Section] 101 question, I have not considered it. And my understanding of that being something within my discretion to not consider . . . comes from, among other places, the *Athena v. Mayo* decision of the Federal Circuit of 2019, 915 F.3d at 755, which says [t]he Court has no obligation to

10

consider a declaration on a motion to dismiss where "the complaint does not reference [it] or otherwise depend on it."[16]

And I held something similar in the case of *Citrix v. Avi . . .* .[17]

So let me talk about Step 1 and Step 2, putting aside the declaration for the moment.

At Step 1, the representative claim here is directed to an abstract idea. Here, [P]laintiff ha[s] stated . . . exactly what the claims are directed to. "The claims of the patents-in-suit are expressly directed to providing real-time targeted advertising based on keywords contained on webpages visited by a user." That's the end of the quote. And it is, as I said, a direct quote from the complaint [D.I. 1 at paragraph 24].

For purposes of the motion, [D]efendants suggest that this is what the claims are directed to. In light of [P]laintiff's express allegation which is made in the context of addressing Section 101 in the complaint, and in light of [D]efendants' acceptance of that allegation for purposes of the motion, I conclude this is what the representative claim is indeed directed to.

I further agree with [D]efendants that this articulation of what the claims are directed to is an abstract idea. That is, ["]providing real-time targeted advertising based on keywords on [webpages] visited by a user["] is an abstract idea.

We know this from highly similar Federal Circuit cases that have found patents on targeted advertising to be non-patentable. That includes the *Intellectual Ventures v. Capital One Bank* decision, 792 F.3d 1363 from the Federal Circuit in 2015[,[18]] which found that []claims drawn to ["]customizing web page content as a function of navigation of history and information known about the user,["] e.g. browsing history, were claims that were directed to the abstract idea of ["]tailoring content . . . based

---

[16] *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019).

[17] *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 522 n.6 (D. Del. 2019).

[18] *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).

on information [known] about the customer." And the Federal Circuit held that those claims were not patent eligible.

Similarly, in *Customedia Tech. v. Dish Network*, 951 F.3d 1359 from the Federal Circuit this year,[19] [t]he Court found . . . that [c]laims drawn to [a] "data delivery system for providing automatic delivery of . . . specifically identified advertising data" was directed to the abstract idea of ["]using a computer to deliver targeted advertising to a user, not to an improvement [in the functioning] of [a] computer." And there again, the Court found those claims at issue to be not patent eligible.

Here, the representative claim[,] as B.E. Tech itself pleads[,] is directed to targeted advertising based on keywords, which is in all material ways analogous to the type of tailoring of . . . advertising that the Federal Circuit has instructed is not patentable.

B.E. Tech submits that its method in the representative claim purportedly provides technological solutions to a technological problem, but those technological problems do not appear to be identified other than pointing to functional drawbacks with prior art online advertising methods which is generally discussed in the '410 patent in columns 1 through 3.

And []the technological solutions that are purportedly in the claims are not pleaded in the complaint in any way other than a restatement of the abstract idea itself. The purported improvements to computer functionality must be "captured in the claim" if they are to help [P]laintiff withstand the motion. . . . That comes from, of course, *Berkheimer*, 881 F.3d at 1369-70, [o]r *RecogniCorp*, 855 F.3d at 1327 from the Federal Circuit in 2017.[20]

Looking at the complaint and the patent, they do not plausibly establish how this standard[,] that is[,] capturing in the claim the improvement to computer functionality, . . . is met.

[D]efendants have provided real world examples of tailored advertising in, for instance, newspapers and magazines[,] or salespeople targeting their sales pitch based on what they observe about their customers in real-time as those customers move about a

---

[19] *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020).

[20] *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

store. Those are persuasive and helpful comparisons. These physical world analogies are not dispositive, of course, on the [Section] 101 issue or even on the Step 1 portion of the [Section] 101 analysis[,] but they do provide some further support for the Court's conclusion at Step 1.

By contrast, B.E. Tech's reliance on *Enfish*[21] as the most analogous case at Step 1 I find to be unpersuasive and really largely conclusory. Rather than drawing out similarities between the claims of *Enfish* and the claim here, B.E. Tech merely submits that the representative claim represented unconventional computer technology solutions addressing a technical problem unique to network-based advertising, but B.E. Tech does not persuasively identify what those technical solutions are.

Really, nearly the entirety of B.E. Tech's argument both in its brief and today attempts to run away from what it itself alleged in the complaint that the claims are directed to.

Now, when confronted with the motion to dismiss, B.E. Tech contends that the claims are directed to what is now called a two-tiered architecture. B.E. Tech contends that the claims are directed to an improvement to computer functionality[,] insisting that prior to the invention in 1998, it was not technologically possible to observe a user in real-time as the user browsed the Internet, and [it was] not possible to react to the user's browsing by sending the user advertisements targeted to keywords in the user's searching. That's, as I understand it, the two-tiered architecture that [P]laintiff now says its claims are directed to.

The phrase "two-tiered architecture" is not used in the complaint. It is absent not only just from how [P]laintiff characterized in the complaint what the claims are directed to, which I quoted earlier, but the two-tier concept is entirely absent from the complaint itself.

Plaintiff argued today that the two-tiered architecture is evident in the plain language of the claim[s], or, more particularly, that this, two-tiered architecture would be evident to one of ordinary skill in the art in 1998.

That may be true, but it is not alleged in the complaint.

---

[21] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

13

This contention may also implicate claim construction issues, but [P]laintiff has identified no claim terms it contends require construction before the Court decides the Section 101 issues. The claims make no express reference to any tiers, let alone two tiers.

The specification does make, as best as I can tell, one reference to a two-tiered approach to targeted advertising. I found that in column 20 in lines 5 through 23, but it is not clear to me now if that two-tiered approach is captured in a claim. It's not clear to me now whether that is merely one embodiment or is the full scope of the representative claim. And the complaint addresses none of this.

Given what I am permitted to look at on this motion, I am not reading the two-tiered architecture into the abstract idea at Step 1.

Now, I recognize that [D]efendants suggested today that the two-tier concept could, for purposes of the motion, be read into what [Plaintiff] allege[s] the claims are directed to. And I recognize [D]efendants argue that even if you do that, . . . the revised Step 1 idea that the claims would be directed to would still be abstract. And [D]efendant[s] further argue[] that at Step 2, all the claims would then be . . . practicing[,] using conventional computer components, the abstract idea modified to include the two-tiered architecture. It is still an abstract idea, just conventional computer functionality. Therefore, still not patent eligible.

[D]efendant[s] may be right about all of this, but given the complaint that I have in front of me, which doesn't allege any of this, and given what I expect [Plaintiff] want[s] us to think about the claims given the declaration, I'm going to be letting [P]laintiff have a chance to ask for leave to amend. Maybe they will work those concepts in that declaration into the amended complaint. And then I will have to presumably confront these issues.

Let me talk briefly about Step 2.

Given that I'm not considering the declaration at Step 2 today, there is not that much to add. The operative complaint[,] in my view[,] does not currently contain plausible allegations of an inventive concept captured in the claim. That is, the complaint does not contain the plausible allegation that any element or combination of elements in the representative claim ensure[s] that

14

the claimed method in practice amounts to something significantly more than the abstract idea that I found at Step 1.

The complaint alleges there is something non-conventional, not well[-]understood[,] and/or not routine about the implementation of the two-tiered targeted advertising . . . but about the implementation of the targeted advertising using keywords in real-time, . . . the allegations are just conclusory.

As importantly, the patent seems to make clear that all of the hardware used in the claims is conventional computer hardware. That is what I get – at least at this point when I don't consider the declaration, that is what I get looking at columns 4 and 5 of the patent. And the same seems to be true of the software used in the claim, particularly given the extensive disclosures of prior art . . . and the glossary of terms [in] the patent specification, all of which seem to indicate that the claims are nothing more than the practice of the abstract idea using conventional computer components.

And if all of that is correct, then the patent will fail at Step 2 as well as Step 1. For instance, for those principles of law underlying that conclusion, you can see . . . *IV v. Capital One . . .*, 792 F.3d at 1370 to 71.

B.E. Tech's reliance on *DDR Holdings*, 773 F.3d 1245 from the Federal Circuit in 2014 is unavailing.[22] There, the Federal Circuit determined that certain claims directed to an Internet-centered problem were patent eligible.

The claim language here, based on what I can look at, seems to only recite generic computer hardware and software and server elements. It does not seem to provide an Internet-centered [solution] that is captured in the representative claim.

But I'm emphasizing "seems" because, again, the Step 1 and Step 2 analysis I have undertaken is based on the complaint in front of me[, and t]he patent in front of me, which can't [be] change[d in] the complaint[.] I'm going to provide an opportunity to possibly change [the complaint] . . . .

So given all that, how are we going to proceed?

---

[22] *DDR Holdings v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014).

15

> I am going to allow [P]laintiff to file a motion for leave to file an amended complaint. So I'm not yet even sure that [P]laintiff should be permitted to file an amended complaint, but I am sure the best course of action is to give [P]laintiff a chance.
>
> And [Plaintiff has] to go first. [It has] to put together the proposed amended complaint and to file the motion, and [it has] to file the opening letter brief explaining why, given what I have said about the patent, given where we are in the procedural history of this case, given the concerns of Rule 15, [and] given the governing law on motions for leave to amend, why [it] should be permitted in fact to press an amended complaint. And then [Defendants will have their] chance to respond.
>
> I'm going to give you all a few days to figure out the briefing schedule. . . .
>
> Given the declaration of the expert which is now in the record, and which I have . . . it may be that [P]laintiff can plausibly state a claim that would survive a Section 101 challenge. I don't know, and I'm not prepared today to say it would be futile, but I'm also not yet persuaded there is a plausible claim here that can survive in light of the disclosures in the patent itself.
>
> I do think that giving [P]laintiff this opportunity is not only the right thing to do under the overall circumstances but it's consistent with Federal Circuit and Third Circuit law, including the Federal Circuit's recent decision in the *Realtime* case.[23]
>
> So that is how we will proceed. And I think, and as is evident from what I have said, I have some skepticism about whether [P]laintiff can succeed, but I also am not yet ready to say they can't succeed, so the right thing is to let them try. But [P]laintiff does have a lot of work to do to overcome what I imagine would be a renewed Section 101 opposition to a motion for leave to amend.
>
> If [P]laintiff does choose to proceed with an amended complaint, and if [D]efendants do defeat that motion with grounds that have been articulated already and that we all have [been] prepared to address, it may be that [D]efendants will have a persuasive argument in that circumstance that they should be reimbursed for their fees for opposing the motion to amend, or

---

[23] *Realtime Data LLC v. Reduxio Sys., Inc.*, 2020 WL 6228818, at *5 n.3 (Fed. Cir. Oct. 23, 2020).

maybe even that they may have a meritorious motion ultimately under Section 285 to declare this case is exceptional. I can't say today. I don't have the proposed amended complaint in front of me. I don't know today whether it would be futile to allow that amendment or not. [P]laintiff gets another chance.

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE